Our next case on the call of the docket is Agenda Number 12, Case Number 113-148, Patrick Engineering, Inc. Appelee v. City of Naperville Appellant. Counsel for the Appellant, you may proceed. Good morning. May it please the Court, my name is Pat Lord, and along with Co-Counsel Mark Antonio Scarlato, I represent the Defendant Appellant, City of Naperville. I am here today to ask you to reverse the Appellate Court's decision in this case, which overturns and is contrary to more than 100 years of case law, including case law established by this Court, relative to agency law in the State of Illinois as it applies to public bodies. Before the Appellate Court's decision in this case, a municipality could only be bound in an equitable estoppel by an affirmative act of the municipality itself, or by an affirmative act of an employee who was granted express authority by the municipality to take that act. The Appellate Court's decision has expanded that law to hold that public bodies may also be bound on the basis of apparent or implied authority. And has read an allegation of authority into plaintiff's complaint to that effect where none exists. At issue in this case are counts 1 and 2 of plaintiff's third amended complaint, which allege a breach of contract based upon a theory of equitable estoppel. In these two counts, plaintiff contends that the city should be equitably estopped from denying it payment of $380,000 for services it claimed to have performed outside the scope of the contract approved by the City Council. The contract negotiated between the City of Naperville and Plaintiff Patrick Engineering is 49 pages long and is extremely explicit and detailed in terms of its scope and the deliverables for which plaintiff will be paid. Section 2 of the contract, entitled Additional Services, was drafted so that we would never be before this or any other court with regard to the issue of whether or not additional services had in fact been authorized. Under the contract awarded to plaintiff, the plaintiff was to create a stormwater database of stormwater features such as manholes and catch basins and inlets for a 20 square mile area of the city called Area B. Before beginning that 20 square mile area project, the plaintiff was to complete a pilot area so that the methodology for the entire project could be established before they proceeded on the entire 20 square mile area. The total cost of the project, which was established by Patrick Engineering's proposal to the city, was $436,392. The city paid Patrick Engineering $77,312. Patrick Engineering claims that it's due another $380,419. As a result of these additional services, it claimed to have performed outside the scope of the contract approved by the City Council. Plaintiff alleged in its complaint that it performed these alleged additional services pursuant to Section 2 of the contract, entitled additional services. However, in fact, plaintiff conceded that it did not perform the services in compliance with the provisions of Section 2 by which it would have gained absolute clarity as to whether or not those additional services it claimed to perform were authorized or it would have been told not to perform those services and that it would not pay for them. Instead of complying with the contractual obligations set forth in Section 2 of the contract, plaintiff instead relies upon the theory of equitable estoppel for payment from city taxpayer money of $380,000. While equitable estoppel may be allowed in rare circumstances against a public body, the application of equitable estoppel against a public body is rare and should not be allowed unless there are compelling and extraordinary circumstances, especially where public revenues are involved, as they are in this case. In order to plead a cause of action for equitable estoppel, a plaintiff must allege an affirmative act by the municipality itself or by an agent of the municipality expressly authorized to take that action. Plaintiff must plead the inducement of substantial reliance by that affirmative act. There must be extraordinary or compelling circumstances. And finally, plaintiff must have had no knowledge or convenient means of knowing whether or not the facts of the situation, in this case whether or not additional services were approved, was correct. As noted in the case of Village of Wadsworth v. Curtin, 2nd District, 2000, a party seeking to claim the benefit of estoppel cannot shut his eyes to obvious facts or neglect to seek information that is easily accessible and then charge his ignorance, in this case quite literally, to others. The basis of plaintiff's claim of equitable estoppel in this case is based on three elements. First, within weeks of being awarded the contract, in this case by the city of Naperville, plaintiff notified city staff that a change order would be needed to increase the value of the contract. And when city staff didn't agree, plaintiff walked off the job. In response, on August 10, 2007, the city's strategic service manager, Beth Lang, wrote a letter. She said, please return to work and complete the pilot area as required by the contract. You know you have to complete the pilot area first. She provided a chart, a graph, of all the costs that would be paid to Patrick Engineering for completion of the pilot area, including project management costs, data collection, the technology component, anything associated with the pilot area. It came to $85,719. And she said, this is what you'll get paid for the pilot area. Do that first. She advised, upon delivery and review of the pilot area data, the city will work with plaintiff to determine if a change in scope to complete the remainder of Area B is required. At that time, the project specifications, feature count, projections, and budget will undergo thorough review and any necessary changes will be made. There was no promise of a change order made in that letter. There is certainly no reference to additional services outside the scope of the contract in that letter. This letter is the primary basis upon which plaintiff bases its claim that it performed $380,000 of services outside the scope of the contract. It's attached as Exhibit 5 to plaintiff's third amended complaint. Next, and the second component of plaintiff's claim of equitable establishment, is verbal assurances from the same strategic services manager, Beth Lang, and from the IT team leader, Larry Gunderson, that once the pilot area was completed, a change order would be issued. And plaintiff's complaint alleges that the change order was tied to the feature count, which is all elucidated in the letter dated April 2, 2007, attached as Exhibit 2 to plaintiff's complaint. There's nothing in the additional services that has anything to do with feature count. So the change order was based upon feature count, according to the plaintiff. But the additional services listed in Paragraph 24 of Plaintiff's Count 1 of its third amended complaint has nothing to do with feature count. It has to do with whether or not the city provided properly cataloged plans, whether or not the as-built data had incorrect information included on it, whether or not the pilot area, which was simply a subset of the entire project, had been expanded from one to three square miles. Those are the kinds of additional services alleged by plaintiff. The only thing that sounds remotely like an additional service is that plaintiff alleges that the city asked it to include additional plans and categories of plans into the database. But it has nothing to do with the feature count upon which the change order was allegedly going to be approved, according to plaintiff's allegations. Plaintiff's final basis for a theory of equitable estoppel against the city is that there were other city employees who were aware that it was performing additional work and failed to stop it from taking that action. There is no allegation in plaintiff's complaint that those other employees of the city had any responsibility for or authority over this contract. Moreover, the law in the state of Illinois is clear that it needs to be an affirmative act, not the failure to act to bind a city in equitable estoppel. But most importantly, Your Honors, plaintiff did not allege that any city employee had any authority to approve $380,000 of work outside the scope of the contract approved by the city council. The parties entered into a stipulation. The city had filed a motion to dismiss. The parties entered into a stipulation for the purposes of that motion to dismiss that went like this. One, there was no authority given by the corporate authorities for performance of the additional services. Two, Patrick Engineering performed additional services. Three, someone in the building department was aware that Patrick Engineering was performing additional services and did not stop them from performing them. There was a fourth item in the stipulation that pertained solely to quantum merit with regard to benefit received by the city. In light of the allegations in plaintiff's complaint and the parties' stipulation, the trial court dismissed counts one and two of plaintiff's third amended complaint, relying on the second district case of Nielsen-Massey-Vanillas v. Waukegan, a 1995-2000 case, where the appellate court held that municipalities may only be stopped when the inducing act is performed by the corporate authorities themselves, such as by way of legislation or by an act of an agent who has expressed authority, and that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority. The appellate court reversed the trial court's decision. While the appellate court acknowledged that there are many cases that stand for the proposition that the plaintiff has to show that the municipality's corporate authorities themselves created the estoppel or that the municipal agent possessed formal authority to act, as the word used by the appellate court, but the court stated that it found the validity of that proposition to be far from clear. That it appeared to add a third requirement to the claim of equitable estoppel and that it was a creature of appellate courts only. The appellate court went on to say, Patrick has alleged that persons who appear to have been designated by the corporate authorities to oversee the stormwater management project made representations to Patrick that induced it to perform the extra work. Thus, even though plaintiff failed to plead any authority, any authority at all by any city employee, not express or apparent or implied no authority to perform another $380,000 worth of work and stipulated that there was no corporate authority to do so, the appellate court created a new standard of authority and then applied it in this case in order to reach the conclusion that plaintiff had alleged enough to state a colorable claim of equitable estoppel. The appellate court stated that the requirement of an action by the municipality itself or an employee expressly authorized to take that action was contrary to this court's holding in city service oil versus city of displaced. However, in the city service case, the Supreme Court cited two other earlier Supreme Court cases where the general rule that a city cannot be estopped by an act of its agent beyond the authority conferred upon him and that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority and this is so even when the agent himself may have been unaware of the limitations on his authority. The court in city service went on to say that a municipality could be equitably estopped in special circumstances where it would be highly inequitable or oppressive to enforce such public rights. The court's finding was supported by its determination that the city had acquiesced and therefore ratified the issuance, in that case, of a zoning permit. In the case at hand, there could have been no acquiescence or ratification by the city council because there was no knowledge whatsoever on the part of the city council and plaintiff didn't allege that there was any. Furthermore, the plaintiff in this case did not take any steps, as the plaintiff in city service did, to ensure that it was acting pursuant to authority. Instead, the plaintiff in this case did just the opposite. It closed its eyes in order to avoid finding out whether or not the additional services were authorized or not. It had the contractual vehicle to do so and it elected not to use it. But the letter you described seemed to say to get back to work and the rule that you proposed to us would preclude relief for the plaintiff no matter how high the ranking official was or employee might be. The letter from Beth Lang did direct the plaintiff to return to work. And in that letter, she said, when you finish the pilot area, we'll sit down and the pilot area is only a very small fraction of the entire project. Then we'll sit down and we'll go over everything and see where we are, but finish the pilot area first. And they did. Pardon me? And they did do that. They attempted to. They were unable to. The pilot area was never accepted. And then they walked off the job again. Did I answer your question? How do you address the appellate court's position that pleading an equitable estoppel is a far cry from proving equitable estoppel? And Patrick still has to prove that those who appear to have authority to bind the city in fact had the authority to bind the city. Your Honor, I'd like to respond to that in two ways. First of all, the appellate court did something catastrophic in this case. It would be the equivalent of changing the standard of proof in a criminal case from beyond a reasonable doubt to preponderance of an evidence, preponderance of the evidence. It changed the requirement that there has to be express authority to apparent or implied authority by city employees. That will have catastrophic results, not just for municipalities, but for every public body in the state of Illinois. So that needs to be addressed first and foremost, Your Honor. Secondly, you still need to plead, you still have to plead facts in support of your claim. And one of the facts is that there's authority. The very first fact is that there was an affirmative act taken by the municipality or an agent who has express authority. That must be alleged. It wasn't alleged. They filed five complaints. It wasn't alleged in any one of them. They failed the state of cause of action. And therefore, the motion to dismiss was properly granted, especially in view of the stipulation in which they said, yes, we understand the corporate authorities never authorized the additional services. Does that answer your question? It does. The case at hand is, sorry, in terms of the comparison of this case to city service, the plaintiff didn't take advantage of the convenient means it had in the contract to find out whether or not it was allowed to perform additional services. Finally, the appellate court seemed to find that if the underlying contract was valid, a modification or amendment of the contract could be irregularly entered into. In order to amend a contract or modify a contract, you have to have authority to do so, and there have to be terms. The plaintiff has already alleged there's no authority or stipulated that there's no authority. And there were no terms. It's important to note. In other cases where equitable estoppel was discussed, the plaintiff is saying, you owe me $150,000 if I perform this work. You owe me $7,500 if I perform this work. The plaintiff never said anything like that. You would have to believe that Beth Lang, the strategic services manager, and the IT team leader gave Patrick Engineering a blank check and said, just fill it out for whatever you need. Whatever additional services you want to perform, that's what we'll pay. It's not plausible. A case on point. Ms. Lord, I see your light is on. Are you going to bring up the accounts stated? Your Honor, I would like to either reserve that for rebuttal or stand on my brief. Thank you, Your Honor. Justice. A case on point with respect to the issue of a modification of a valid contract is the City of Belleville v. Illinois Fraternal Order of Police Labor Council. In that case, there was a valid underlying contract. And the mayor of the city in that case, the mayor, entered into an addendum which added some significant contractual obligations. The appellate court in that case said there was no authority. Absent authority, the mayor can't bind the city to an addendum to a contract, even though the underlying contract was valid. Finally, Your Honor, in terms of regularly entered into contracts, certainly there are cases like that where bidding wasn't done correctly. And yet that was McGovern v. City of Chicago where the city accepted a bid even though it didn't comply with bid specifications, accepted the work, and then said, but we don't have to pay because your bid didn't comply with bid specifications. That's an irregularity. This $380,000 of money of additional services that the city council knew nothing about, that's not an irregularity. That's a new contract that the city council knew nothing about. A couple of others. The city council, is it informed all the time? I mean, I notice by some of the letters that people are copied in from all the letters, the project director, the ‑‑ I'm trying to think where the letter is now. The Beth Lang letter, it's attachment 5 to their complaint, Your Honor. Yeah, but everybody's copied in, project director, the director of public works was copied in. So at what level is there to be attributed any information to the person above if everyone's copied in, project director? Well, the city is run by 910 employees who are responsible for various different projects. So we're all copied in on anything. Legal will be copied in on contracts too where we might be involved. That doesn't mean the city council has any knowledge or is aware of it. Well, the people who are contracting with the city generally don't go directly to the city council. They go to the project director, don't they? Right. And in this case, the city council approved a contract that said, and again we're back to principle and agency principles, the principle's words are set forth in the contract. And the contract says you're to be paid $436,392. If you need more money than that, section 2.2 says you have to come back for an amendment to the contract. It speaks to the contractor through the contract. Finally, Your Honor, I see that my time is finished if I may just say that if the appellate court's ruling in the case at bar is allowed to stand, the enforceability of contracts will become an option instead of an obligation and employees of a municipality who are involved in any aspect of city operations will have the unintended and unlimited authority to bind the municipality to financial and other obligations without the municipality's knowledge or approval. We've got one more question here. Lange and Kessel, were they acting as the city project representatives? Yes, Your Honor. And what authority do they have? But isn't that a question? And I don't think that answer was developed at the hearing. But do we need to develop that through discovery? How can a fact question result in a motion to dismiss? There was no fact issue, Your Honor. That's why there was, first of all, no pleading of authority in the stipulation that the corporate authorities didn't give any authority. Secondly, with regard to the project representative's authority, which I think is what your question is, that is defined in the contract as pointed out for the first time in these proceedings by the plaintiff. Section 3.6 of the contract defines with specificity what the project representative's obligations and authority is under the contract. And it specifically says that project representative Debbie Kessel, Beth Lange, had the authority to receive information, interpret and define the city's policies and decisions with respect to the work covered by the agreement, and transmit directions, transmit instructions. There was no authority in that section whatsoever to approve additional services outside the scope of the contract. That authority resided one section up in Section 2 of the contract, Your Honor. Even in the language that you've just read, could that imply that there may have been authority? Is that a fact question that needs to be developed? Your Honor, as I said at the beginning, this contract is 49 pages long. It was written so that everything possible would be clear that could be clear. So the actual responsibilities of the project representative are spelled out. They are to transmit instructions, receive information, and interpret city policies. That simply does not give them the authority to amend the contract. So the only one that could get the authority was the city council? Yes, Your Honor. And if I may just briefly, the amicus brief in this case indicates that catastrophically horrible results, if that's the case, if you have to have a change order every time there will be gaping holes in the road and nobody will be able to fix them, citizens will fall in, people will be hurt. It doesn't work that way. Construction contracts are a different breed than professional services contracts. Contingencies are built in for those kinds of situations. We don't allow gaping holes in the road for citizens to fall into.  Thank you. May it please the Court. Phil Lutkehans on behalf of Patrick Engineering. While Naperville continues to argue that the appellate court created new law, that is just incorrect. The second district did nothing more than apply current law to the case before it and properly said that dismissing this case at a preliminary stage, before discovery, before we can understand those questions of fact that Your Honor has brought up, is error, and remanded the case back to the trial court. That's what it did and that's what it said. It didn't say Patrick Engineering is going to win on the issue of equitable estoppel. All it said was we don't have the facts and we need those facts before we can go anywhere with it. In fact, Naperville cites 20 cases on equitable estoppel, 20. Each one of those cases is after discovery or after the opportunity to interview the witnesses, after a full record. Not one of those cases is a motion to dismiss case. I shouldn't say that. One is only after an opportunity to interview the witnesses and the plaintiff decided not to do discovery. But other than that, every one of them is after a full, complete record. The city had the authority to change the contract, either add or deduct through change orders. Who had the approval? Who has to approve it? The city is not set forth in the contract. And you heard about a stipulation and there was a stipulation. The stipulation, however, did not say that no one had authority to approve the change order. The stipulation was the city council never acted. That's a complete difference. That's what the stipulation was. The city council never approved. Whether it be for additional services or for a change order, Section 3 lists certain responsibilities of the city. Clearly, all of these are not to be completed by the city council. For example, the city shall provide full information as to certain things. The city shall place all available info at the consultant's disposal. It shall make all reasonable efforts to provide access to enter upon public and private lands, provide legal accounting and insurance, consulting services. Those are all, quote, city duties. None of us expect that the city council is going to physically do any of those things, especially by a vote every month or every other week, whatever they meet. That's not how this works. It's not how the real world works. And that's what city services and Kenny and Great Lakes talk about, the real world. There's an ambiguity in this contract. I don't care if it's 49 pages or 250 pages. We've all seen contracts that are long that have an ambiguity. The ambiguity is who is the city? No one at the city told us that we had to go to the city council for this approval. And obviously the city council was not going to do these items set forth in Section 3. But didn't you know under Section 2 that you had to get written permission to authorize any additional services? Well, we just heard for the first time who this project representative was. This is the first time I've heard that because we have not had discovery. And I've kind of heard two different names, and I'm not sure which it is. But we know Ms. Kressel said budget will undergo thorough review and necessary changes will be made. That's what we heard from her. The project representative in 3.6, find the exact language, also has the ability to define the city's policies and decisions. And I think it would transmit instructions. That's the people we deal with on a daily basis. We take our orders from them. Just like in Great Lakes, just like in Kenny, just like in Stalen, the person in the field on the job takes their instructions from the person who is their project representative. We took our instructions from that project representative. And honestly, these are all very honest questions, and they're important questions. But they're important questions that should be decided after facts, after we get discovery, which we were not allowed to have. We sent out written discovery, and they responded by saying we're not responding. The court then brokered the stipulation after it said, you know, we're not going to give you this discovery, Mr. Lukians. So that's where we were. And the stipulation says very few things. We were not given discovery. We were not allowed to proceed with discovery. We don't know what documents the city has. Since this was dismissed on 2615 and 2619, is it your contention that the allegations contained in the complaint are sufficient, notwithstanding the city's argument that you did not make the express allegations of authority, who had the authority to change, and that type of thing? Absolutely. If you review city services, and I'm sure you all have or will, that statement that Ms. Lord makes about it has to say who has the authority, that's not anywhere in city services. City services has two elements. One, inducement to act by the affirmative actions, paren statements or conduct on paren of the municipality's officers, and two, it reasonably relied upon those actions incurring expenses, such that it would suffer a substantial loss if equitable or stop were not applied. I heard her talk about it said express authority. It doesn't say that. That's the entire statement of the elements. We don't have to say that particular person. It doesn't require us to. And, in fact, until I sat here today, I didn't know who the project representative was, because we've never been informed who that is. In fact, their brief talks about it being Lang, and then I heard today it was Cressland Lang. I just don't know. Mr. Lukenhaus? It's fine. When you get a name like that, you don't really worry. At A11 or A114, it copies in. It's a letter to Scott Stocking. Yeah. And it copies in who the public works director is, purchasing director, engineer services, operations team leader, project manager. So it describes all the people involved. Yes, and all those people, most of those people we suggest were aware and had knowledge and were part of this process. The, quote, 3.6 project representative is really what's not real clear. I mean, we were taking our direction from Debbie Cressel, you know, who we thought was the project manager. There's other people and titles involved. But I can't, as I sit here, really tell you what the real pecking order is at the City of Naperville. That's not our responsibility. And until we have full discovery, we're really not in that position to do that, and that's kind of the problem, which goes back to Justice Carminer's original question. Do you concede that there must be actual authority? Yes, and I think we conceded that early on. Whether that's expressed or implied is a different issue because there's been, you know, I'm not sure it's real clear whether it's expressed or implied, but the court uses the word appear once in 28 pages, okay? And it's based in the context of other things. It's based in the context of paragraph 35, the opinion that Patrick's allegations raise the reasonable inference that the people, were the people involved in managing the project for the city, and that was enough to state a claim, not prove the claim. And right below the use of the word appear, or above the use of the word appear, it says it's relying on cases where the governing body delegated, either expressly or impliedly, its authority in a particular area to the agent in question. That is actual authority, and that's what the appellate court relied on. Actual authority is expressed or implied versus apparent, and we're not suggesting that apparent authority is enough. And I think that's where this case kind of got here, I think. I think the city said, well, this appellate court said it's an apparent authority case. It really isn't. And, in fact, they didn't even argue that implied was not actual until their reply brief. So I think it's pretty clear that it is actual authority, whether it be expressed or implied is the standard. And, Counsel, doesn't Section 2.1 answer the question, whether or not you're going to receive actual authority? Because Justice Garmon asked you the question about Section 2, and I didn't hear a clear-cut answer on that. It seems that the next to the last sentence of that first paragraph in 2.1 says, unless you hear something, the contract deems that it's been rejected, your request for additional services. And, honestly, that's the same kind of contract provisions that are in Kenny, that are in Great Lakes. That specific sentence? Not that specific sentence, but the sentence that says any approval, unless you get it from the city council by a vote, is not good enough. Stalen says that, which this Court accepted and cited with approval in Kenny. Kenny says that, Great Lakes says that. All three cases are cases where the contract says you've got to get approval by the city council, otherwise the approval is void. In all three cases, this Court and the appellate court said, you know what, we cannot allow cities, whomever, to watch, stand idly by after they induce the action, and then say afterwards, hey, guess what, we're not going to pay you. And that's the ratification concept that's talked about in Great Lakes, Kenny, and Stalen. Well, I'm not understanding your comments in answer to my question about the sentence that says, failure of the city to respond, et cetera, is deemed to be rejection of. I mean, that's the contract of the parties in this case, regardless of what happened in the other case, the contract in this case. In this contract, the party did respond. Cressel responded. Did the city respond? That is the city. That's our project representative. And as I said earlier, you cannot say, you look at those other things in Section 3 where they use the word city. The city council was not expected to do any of those things. Well, your position in response to my question is that you got a response, and you say, what's the name of this entity or person? Debbie Cressel, K-R-E-S-L. Okay. That was our approval process. Okay. Thank you. If we allow the appellate court opinion to stand, could not employees of a municipality who are involved in any aspect of the operations have the power to bind the municipality to financial obligations without the municipality's knowledge? I don't think so. And I'll tell you why. I think there's enough. Clearly, they need actual authority. I've admitted that. Okay. The word appear, maybe that needs to be cleaned up in a decision. I'd leave that to you. That's much more your ballywick than mine. But the reality of it is that after discovery, if it appears, if it is determined that Ms. Cressel does not have that authority, whether expressed or implied, or any of these other people who we allege did certain things, then we lose the case. But we don't have that, we haven't had that opportunity. And as I said earlier, all of the cases cited by the city are not, none of them are pleading cases. None of them are before facts questions, or none of them before the facts are explored. We didn't get one document from the city. We didn't get one deposition. We asked for a deposition of the person who submitted an affidavit. We didn't get that. All we have was the stipulation that Judge Ellsner said, well, you agree to. And that's where we went forward with. But we kept continuing to ask for discovery and never got it. And that's the problem in this case. And that's why this case is too early to actually determine. I may lose this case. I don't think I will, but I may. But it has to be after a full record, not based on pleadings, where we meet the elements of city services. And just to clarify an earlier question I asked, I asked whether you had to allege express authority. Is that the same as actual authority? And did you allege either? First of all, the city services did not say we have to allege either. Did you? I don't believe we alleged either particularly, yes. Or specifically. I don't believe we did. The main case that the city relies on is Nielsen-Massey. It's the same case the trial court relied upon. The problem with Nielsen-Massey is Nielsen-Massey is a void contract. It was void initio because it was based on a contract that was entered into without any prior appropriation. The city has admitted there is some appropriation here. We don't know how much. And that's kind of a red herring, this 8-1-7, because, again, we have no discovery. I represent many local government bodies as, you know, the city has their own corporate council. Many of those bodies do not, some do, depending on what department, do not appropriate by project or by contract. We appropriate by departments. We appropriate by divisions. We appropriate by funds. And we didn't have that opportunity. I'm sorry, Justice. I apologize. Is this of record, what you're saying now, about other city governments? It is not of record, but it's not of record what Naperville does either. If you look at the cases, however, the cases say that you can appropriate on a much broader, if you look at any public records, the state of Illinois appropriates for IDOT, for the whole department. It doesn't appropriate for, you know, I-290 or I-88 or whatever it may be, those projects. It appropriates by IDOT. And we don't know what Naperville appropriates because we didn't have discovery. The city also suggests that, tries to add a second element, or actually adds a few elements that I have never seen before in any cases that this court has come up with, and that is compelling circumstances. Again, that's a factual question, whether they're compelling circumstances. No ability to know the facts. Again, a question, a factual question, none of which are actually elements in the cause of action of equitable estoppel in any case that I've ever read or that the city points out. They're things that the court takes into account, but they're not actual elements. I want to miscorrect a little something that was in the record here. The pilot area, the city did not accept it. Patrick makes the allegation that it was finished. It was just that the city refused to accept it. The city of Belleville case that was cited by counsel is where the addendum was not appropriated for. That was an actual union contract that is a much different situation than what you have here. I don't think anyone would ever say that I could, that the city mayor could raise the rates of a union contract without having to go to the city for full approval unless that contract specifically allowed it. In conclusion on this issue, Patrick has set forth and pled every element of an equitable estoppel claim and must be allowed to proceed to discovery so the trial court can properly determine if the city has improperly accepted the benefits of Patrick's work that it induced through its own affirmative acts. As for account stated, account stated is a claim that's little more than a form of proving damages for a promise to pay. We don't say that it's its own action and neither did the appellate court. It's really just once you show there are damages, does this come into play as to whether these are the proper amount of damages? Again, a question of fact. As the city admits in its brief when citing... Account stating requires a proceeding certain agreement and agreed upon in certain amount owed. Are either of those present in this case? Well, we have a certain agreement. We have a contract and we have a contract amount. A certain amount owed? Well, we have a certain amount that's in the contract. I don't know that an account stated requires a certain amount owed. I'm not sure I've ever seen a case that says that. What the case laws I've seen says that it's a meeting of the minds. And, in fact, motive part says, for example, where a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection, the retention of the statement of account within a reasonable time constitutes an acknowledgment and recognition by the latter of the correctness of the account and establishes an account stated. It sounded like from your initial comments on account stated, Mr. Lucanzi, you're not even really saying that you're trying to plead a typical account stated cause of action. It's more somehow a measure of damages as it applies to the equitable estoppel claim? As it applies to all the claims. We have a contract claim that is not being appealed. We have a quantum merit claim that's not being appealed or it's not been appealed to this. So it doesn't sound like it's that important whether that account prevails or not. Well, I think it's important because it goes to the issue of damages and the amount of damages. I'm not saying that we have a claim that just because we send them an invoice, we have a claim that irrespective of anything else stands because I don't think that's a fair statement of the law. Great. But even without that account, my point would be you're still going to have a way of proving up your damages on your equitable estoppel claim if allowed to go forward, right? Correct. But I think we have the right to proceed on the account stated claim because of the fact that it is a, it does show a measure of damages and a proof of the measure of damages, if that answers your question. Yes. Okay. Here, the city had Patrick Engineering's invoices for at least 15 months and had never refuted them, never responded. There's nothing, well, I don't have any record of them doing that, nor is that in the case because we have no discovery. But we pled that they had them and never responded, and we would ask that you uphold the decision of the Second Circuit, remand the case back to the Circuit Court for discovery, and further proceedings both on the equitable estoppel claim and the account stated claim, unless you have further questions. Thank you. Thank you, Counsel. Rebuttal, please. Thank you, Justices. Mr. Luekehans pointed out that he is pleading actual authority in this case, which means implied or express authority under the law in the State of Illinois as it relates to agency principles generally. The case law is so extensive that it's kind of shocking to say that to hear that there's no case law that says there has to be express authority. There has to be express authority to bind public bodies, at least there did before the appellate court's ruling in this case. If implied authority is allowed to stand, then this could happen. I'm a senior assistant city attorney for the City of Naperville. I offer to settle this case for $3 million. They say that's a great deal. I'll accept that. I believe I have implied authority to make that offer. I work for the city. I'm working on this case. I'm a senior assistant city attorney. I made the representation that we could settle this case for $3 million. In fact, I have no such authority. But under the appellate court's decision in this case, we'd certainly have a lawsuit over whether or not I had that authority. And there might even come a day where the City of Naperville has to pay $3 million because I made that assertion. That's implied authority. That's the danger of implied authority. It's by virtue of the position of the person who's talking. So if a city inspector is speaking, if the finance director is speaking, if the head of the Department of Public Works is speaking, all those people have positions and authority that would appear to go with those positions. They will all be allowed to bind the public body by their statements. It's an incredibly dangerous place to be, and it's why there are so many cases that stand for the proposition that there has to be express authority. And it's why we took this appeal. It's why it's important that this case be decided. That's a bright-line rule. I mean, don't you think that each case should be determined on its own set of facts and determine whether somebody does have authority to bind? It's a fact question. Justice, do you mean in terms of implied authority or express authority? Well, if you have express, you have express. I'm talking about implied. Implied authority is simply by virtue of your position. So in the example of fact, I mean, some people are in a position, if you actually did get authority from the city council before you started negotiating, you would have express authority. But the plaintiff wouldn't know that because of your position. So that's what I'm saying, is that even though your position is such, wouldn't it be a question of fact and has to be determined by, you know, factual hearing? I understand your question. I think it really goes more to whether or not there should be discovery allowed as to whether or not there's express authority, not implied authority, if I understood your question correctly. Because circumstantial evidence is how you prove implied authority. You will be inundated with cases if implied authority becomes a new standard by which public bodies can be bound. Express authority, yes. And if plaintiffs really didn't have any means of knowledge as to whether or not the city employees had the authority to bind the city, they might have been entitled to discovery on that point. In this case, obviously, it wasn't necessary because they didn't plead it in the first place. And you really don't get discovery on something you don't plead. Secondly, they stipulated, and I have the stipulation here, for the purposes of the motion to dismiss and solely for the purpose of the motion to dismiss, there was no authority given to Patrick Engineering by the corporate authorities that Patrick Engineering perform work and then that the building department or someone in the building department knew Patrick Engineering was performing that work and they were never told to stop. They did stipulate that there was no corporate authority. And in the absence of corporate authority, the project managers didn't have that authority either. So discovery in this case wasn't necessary. As to plaintiffs' allegation that they didn't know who the project representative was, that's shocking because they allege it in their complaints. They allege in their third amended complaint of paragraph 12 that it's Beth Lang, who is the project manager for the city of Naperville's stormwater management project. And in their fourth amended complaint, they allege that it's Debbie Kressel, who is the project manager. So they have alleged that they know who the project manager is and it's kind of surprising to hear today and in their briefs that they didn't know who that was. But most importantly, did I answer your question? Plaintiffs cited the cases of Kenny and Stalin and said, this case is just like Kenny, just like Great Lakes dredge and dock, just like Stalin. That's not correct. In the Kenny construction case, it was a sewer construction case and there were changed conditions. And more importantly, there was knowledge. The sanitary district in that case had knowledge. The contractor wrote them four letters. The president of the sanitary district met with the contractor and told the contractor whatever the chief engineer says is agreeable, we'll do it too. And on top of it, they paid part of the additional costs that the contractor informed them would be necessary in order to cope with the changed conditions. So for all of those reasons, the Supreme Court in Kenny said, you know, we have knowledge and we have waiver and the sanitary district can't back out of it now. We didn't have any of those things in this case. It's not at all similar. Moreover, in the Kenny case, there was ambiguous language as to whether or not it was necessary to obtain authority of the sanitary district. And the court held that in conjunction with the partial payment for the additional services that the contractor was entitled to rely upon that as a contemporaneous transaction and therefore it would assume that the rest of its additional costs would be paid too. None of the plaintiff's costs for additional costs were paid in this case. The city didn't know about them. They couldn't have paid them. Finally, in Kenny, the court specifically noted that the contract language is unique to this case and no general principles of agency loss should be drawn from it. In Stalen, we had a construction contract. And in that case, the contract had two inconsistent provisions. One said that any extra work had to be authorized in writing by the architect and first approved by the board. And another said that the architect had the ability to approve extras that would benefit either the contractor or the city specifically. Again, in that case, the board had knowledge and there was partial payment. And again, we had acquiescence and ratification. We don't have that in this case. Council mentioned something about the city agreed that there was an appropriation. That's not in the record. That's not fact. And as to whether or not they could have found out if there was an appropriation, we are a public body and all of our records are public and subject to the Freedom of Information Act if you can't find them online. I'm going to have to go back to my slides. I'm going to have to ask the court to stand on our account stated brief with just two things. There was no, there could have been no meeting of the minds on these additional services. You just heard why there was no meeting of the minds. An account stated wasn't pled for this case. Secondly, the court of appeals seems to omit, the appellate court seemed to omit the requirement that there has to be an original liability. It said on the account stated, just go back and find out if the city disputed the invoices. And if they didn't, you've got an account stated. That's not the law of accounts stated and it can't be allowed to create an original liability. That's really why we appealed that portion of the decision. Finally, Your Honors, it is critical that public bodies not be bound by the apparent or implied authorities of their employees. Public bodies serve the taxpayers. We don't sell widgets and we don't make a profit. The city of Naperville has 910 employees. If the appellate court's decision in this case is allowed to stand, every time one of those employees writes a letter or has a conversation or sends an email, it could be claimed that they made a representation upon which someone is allowed to rely to their detriment and sue an equitable estoppel. And the city and the taxpayers will be bound by it. This result is not compatible with the framework in which public bodies are required by law to exist in this state. First of all, and most importantly, the corporate authorities are elected by the taxpayers and they are to make the discretionary decisions, not the city employees. If the appellate court's decision in this case is upheld, it will be the city employees making those decisions, not the public body who has been vested with the authority to make those decisions. Furthermore, the municipal code requires that a majority of city council members holding office approve expenditures of public funds. That didn't happen in this case. Bidding statutes require municipalities to give contracts to the lowest responsible bidder, not to someone who alleges they're relying upon the representations of the strategic services manager. The prior appropriation statute requires a prior appropriation be made for any contract or expense. Under the appellate court's decision, that will be literally impossible, because if you don't know that a liability exists, you can't possibly appropriate for it. Next, the public is supposed to be able to know what actions. Ms. Lord? Yes. Sorry to interrupt, but your time has expired. But don't leave. Justice Friedman has a question. Were both Lang and Pressey project managers, or was one of the others? It started off as Debbie Kressel, and then it became Beth Lang. They changed. There was a maternity leave. So for the council to take the position that for the first time you have indicated which one was the project manager? Justice Friedman, they pled in their complaint that they knew who the project managers were. They identified them. In a different complaint, they named the second one. Yes. Correctly. There was confusion, I guess, as to which one really was. There was no confusion. It was Debbie Kressel. She went on maternity leave. It became Beth Lang. And they pled it in their complaint, Justice. They knew who it was. And did you indicate earlier that that person is identified in the contract? The project representative and their duties are identified in Section 3 of the contract, not their names. Not identified by name? No. No, Justice. Did they plead by information and belief? With regard to authority? There was no pleading with regard to authority. I'm talking about with respect to the two project managers. They didn't mention that, Justice. It was never an issue. With the documents that were available under the Freedom of Information Act, if they had secured that, would they have been able to introduce him in this case? Absolutely. And, moreover, if they were unclear about who... Even though discovery was not allowed? First of all, Your Honor, I would take exception with the discovery was not allowed statement. And, secondly, yes, they can obtain Freedom of Information Act requests outside of discovery. And, third, there were over 100 documents attached to their complaint. And what with it? 100 pages. The documents that were obtained under the Freedom of Information Act, what could they do with it in this case? They would have been able to ascertain whether or not a prior appropriation had been made, Your Honor, Justice. They would have been able to know whether or not additional services, certainly they knew additional services hadn't been approved. They knew that the extent of the award of the contract, because they proposed the amount of the contract, was $436,392. They knew that. Thank you. Well, what discovery went forward? When the city filed an affidavit in response to plaintiff's allegation that they acted pursuant to Section 2, the city filed an affidavit saying, no, you didn't. You never asked. You never obtained authority. There was no compliance with Section 2 whatsoever. They sought discovery on the entire case. And we didn't agree, and the court did broker the stipulation as a way of settling the dispute between the parties as to how much discovery was necessary. So they sought discovery, but they really didn't get discovery. Well, the city provided them with an affidavit that they chose not to use that specified exactly what amounts would be paid and what had been paid. They didn't use that. They wanted discovery from all of the employees, not just the person who provided the affidavit. We had long sessions over the extent of discovery that would be requested by plaintiff. It wasn't just with respect to the affidavit. Otherwise, we wouldn't have had a problem. You referenced the stipulation. What was the stipulation? The stipulation was brokered between the parties by the trial court for the purposes of the city's motion to dismiss. There were three parts to it. A fourth part that dealt just with quantum merit. The three parts were that the corporate authorities of the city of Naperville did not approve additional services outside the scope of the contract, that somebody in the building department knew that additional services were being performed, and that person did not stop the plaintiff from performing those services. For the purposes of quantum merit, a fourth part of the stipulation had to do with benefit. Thank you. Are there any other questions? Thank you. That concludes your time. Case number 113148, Patrick Engineering, Inc., Napoli v. the City of Naperville Appellant is taken under advisement as agenda number 12. That concludes our public argument call to the docket. Mr. Marshall, the Supreme Court stands adjourned.